## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **ARTHUR D'AMARIO, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 15-10156-DJC** |
| | ) | |
| **MARK E. STURDY, Clerk Magistrate, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                             December 10, 2015

### I.    Introduction

#### A.    Procedural Background

This Court issued a Memorandum and Order, D. 7, in this § 1983 action directing plaintiff to demonstrate good cause by July 21, 2015 why this action should not be dismissed for the reasons stated therein, including, *inter alia*, the bar of the statute of limitations and the inability of the Court to grant retroactive injunctive relief vacating state court civil and criminal judgments against plaintiff.  Further, this Court indicated that plaintiff's claims with respect to his motion for DNA testing did not appear to be barred by the statute of limitations, but his request for retroactive injunctive relief vacating adverse state court judgments was not the type of relief that could be granted against Clerk Magistrate Sturdy.

On July 21, 2015, plaintiff filed a show cause response, D. 10, and an amended complaint, D.11.  On August 10, 2015, plaintiff filed a supplemental response to the order to show cause, D. 13, without permission to file beyond the deadline.

#### B.    The Show Cause Response

In his show cause response, plaintiff alleges that his amended complaint pleads facts that

effectively remove the statute of limitations bar to his claims.  Specifically, he alleges that he has pled a "continuing deprivation" of his procedural rights from 1997 to 2015.  D. 10 at 1. Accordingly, plaintiff contends the continuing violation doctrine permits him to raise claims that otherwise would be barred by the statute of limitations.  Further, plaintiff claims that his diligence in pursuing his postconviction remedies was thwarted by his incarceration by the Federal Bureau of Prisons (keeping him out of Massachusetts after 2000) and by the Prison Litigation Reform Act (because he was a three-strike litigant and unable to pay the Court's filing fee).

Next, plaintiff alleges that his postconviction petitions for forensic testing, filed pursuant to Mass. Gen. Laws ch. 278A, § 3, were mailed to the Clerk Magistrate Sturdy's court on October 5, 2012 and May 5, 2014.  He asserts that both of these petitions were "thrown away" by court clerks. He alleges the same thing occurred four times in the Rhode Island Superior Court from 2012-2013. Much of plaintiff's show cause response reiterates his claims of procedural deficiencies in his state court cases and his inability to file his notices of appeal from every final judgment.

### C.   The Amended Complaint

A detailed background of the allegations contained in the original complaint is set forth in this Court's Memorandum and Order, D. 7, and is incorporated herein by reference.  In the amended complaint, plaintiff now seeks to sue defendant Clerk Magistrate Sturdy in both his personal and official capacity, not just his official capacity.  He also adds as a defendant Thomas Quinn, III ("Quinn"), Bristol County District Attorney, and sues him in his official capacity.  Plaintiff alleges both defendants deprived him of his rights to due process, equal protection, free speech and access to the state trial and appellate courts.

Plaintiff's amended complaint contains a host of grievances concerning not only the matters alleged in his original complaint but matters relating to his claims of harassment and threats by police officers and others due to his exercise of free speech in connection with political activity, as well as matters relating to his state court criminal convictions and civil judgments, release from federal custody, calculation of his prison sentence and his housing difficulties as a consequence of

his state conviction.

As relief, plaintiff again seeks an Order from this Court directing the defendants to vacate all of his state civil and criminal judgments, or, in the alternative, direct the defendants to appoint counsel for him, direct the docketing of all of his appeals and adjudicate his Rule 30 motions. Further, plaintiff seeks to have this Court order Quinn to arrange for DNA and fingerprint comparison on the alleged anonymous letters of 1998-99.

Next, plaintiff seeks an Order from this Court directing Clerk Magistrate Sturdy to provide him with a true, complete record of his February 4, 1999 hearing in one of his state cases, at government expense.[1]  He also seeks an Order from this Court directing Quinn to release all public and exculpatory records to him and to admit that plaintiff:  (1) was never in Massachusetts on August 8, 1998 and August 15, 1998; (2)  never contacted Sellers on those dates; and (3) was not a fugitive from justice.  Further, plaintiff seeks a temporary and permanent restraining order prohibiting defendants and their agents from continuing to threaten him or tamper with his Section 8 housing[2] and/or his court files and from taking unlawful actions to banish plaintiff from Massachusetts, Rhode Island and the state courts.

Finally, he seeks fees and costs and any other just relief.  Attached to the amended complaint was a proposed summons form directed to Quinn completed by plaintiff to be issued by the Clerk.

### D.    The Supplemental Response to Order to Show Cause

In his supplemental response to the order to show cause, D. 13, plaintiff purports to provide documentary proof of his claims, by submitting additional exhibits.  The supplemental response is rambling and not entirely understandable.  He appears to make a number of allegations concerning

---

[1]This request was included in plaintiff's Motion for Funds for Transcripts, D. 9.   On July 30, 2015, this Court denied that motion.  See  D. 12.

[2]In 2010, plaintiff, then a three-strikes prisoner, filed a suit in the United States District Court for the District of Rhode Island alleging that Sellers and Natalia Mendes conspired at various times between 2002 through 2009, to impersonate him for the purpose of having his name taken off Section 8 housing waiting list.  D'Amario v. Mendes, et al., Civil Action No. 10-00280 (D. R.I. 2010).

various, seemingly unrelated incidents over a decade that he claims supports his conspiracy theory.

## II.    Discussion

### A.    The Show Cause Response and Supplemental Response are Inadequate

After review of plaintiff's show cause response and his supplemental response, this Court finds that nothing in those documents serves to alter the prior findings set forth in the Memorandum and Order, D. 7.  Although plaintiff sets forth his state cases in a clearer fashion in the show cause response, this only serves to bolster the conclusion that his claims relating to state civil and criminal judgments are time-barred because those claims arose out of events in the 1990s and 2000s.  His attempts to circumvent the statute of limitations by invoking the continuing violation doctrine are not persuasive.  This Court previously indicated that plaintiff had not raised any factual allegations that could invoke equitable tolling or the continuing violation doctrine with respect to claims that his notices of appeal were not filed nor counsel appointed.  The continuing violation doctrine only allows a plaintiff to seek damages for acts occurring outside the limitations period if those acts are part of an ongoing course of unlawful conduct that continued into the limitations period.  See O'Rourke v. City of Providence, 235 F.3d 713, 730-31 (2001).  "Ongoing injuries that stem from a single unlawful act do not state a continuing violation."  Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v.Juarbe-Jimenez, 659 F.3d 42, 51 (1st Cir. 2011).  Despite plaintiff's bald and unsupported assertion that the defendants' conduct has been ongoing for over seventeen years, they are discrete alleged wrongful acts that cannot be considered as part of a continuing violation.  See Memorandum and Order, D. 7 at 6-8.

Importantly, plaintiff fails to address sufficiently the statute of limitations bar as it relates to the Prison Litigation Reform Act's ("PLRA") three-strikes rule.  See 28 U.S.C. § 1915(g).  In the prior Memorandum and Order, this Court concluded that the statute of limitations for § 1983 cases is not tolled for prisoners who were subject to the three-strikes rule or for released prisoners such as plaintiff who could have prosecuted a civil § 1983 suit while imprisoned, but for their three-strike status and inability to pay the Court filing fees up-front.  See D. 7 at 7-9.  Rather than address that

issue, plaintiff simply states that he was "stymied" by the PLRA. D. 10 at 1.

With respect to the DNA claim, however, this Court previously found that claim was not barred by the statute of limitations; nevertheless, the issue was that plaintiff sought retroactive relief against Clerk Magistrate Sturdy and this Court lacked authority to vacate state judgments or to compel the relief from a state official that he seeks. Plaintiff's show cause response also does not address those issues.

Further, plaintiff's supplemental response adds a host of allegations of wrongdoing by various state actors spanning over a decade; he does not, however, address in any meaningful fashion the statute of limitations bar.

**B.    The Amended Complaint is Insufficient**

With respect to plaintiff's amended complaint, D. 11, this Court finds that the allegations contained therein do not resolve the statute of limitations problems as set forth in the Memorandum and Order D. 7. Moreover, as discussed below, the amended complaint fails to comport with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and the favorable termination rule bars any claims that would necessarily imply the invalidity of his conviction or sentence. Further, this Court cannot grant the relief requested.

**1.    Statute of Limitations**

This Court has addressed the statute of limitations as a bar to plaintiff's claims in this Memorandum and Order, as well as in the prior Memorandum and Order. No further expansion in this regard is necessary. Suffice it to say that plaintiff's attempts to rehash his unsuccessful claims in matters occurring more than three years ago cannot be raised here.

**2.    Rule 8 Deficiencies**

Rule 8(a) requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting

<u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  It also must afford the defendant(s) a "['] meaningful opportunity to mount a defense,'" <u>Díaz-Rivera v. Rivera-Rodríguez</u>, 377 F.3d 119, 123 (1st Cir. 2004) (quoting <u>Rodríguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1172 (1st Cir. 1995)).  "In a civil rights action as in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why."  <u>Educadores Puertorriqueños en Acción v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004).

With respect to Clerk Magistrate Sturdy, plaintiff sues him in his personal capacity, but does not set forth the basis for personal liability.  He only indicates that this defendant is not entitled to absolute immunity but only quasi-judicial immunity.  He does not seek compensatory or punitive damages.  Rather, his requested relief seeks an Order directing this defendant to take actions, presumably in an official capacity, with respect to vacating plaintiff's state civil and criminal cases and correcting state court dockets.  Although plaintiff has modified his requests for relief in his amended complaint to seek prospective injunctive relief as an alternative to vacating his criminal and civil judgments, he still has not set forth a legal basis that would permit this Court to compel a state official to act in a manner that would grant him the relief requested.

Further, while plaintiff makes bald allegations of a vast conspiracy of denial of access to appellate remedies, altering case files and colluding with others to harass plaintiff to leave Rhode Island, this Court need not credit the allegations without any underlying factual support.[3]  A general allegation of conspiracy to violate civil rights is not sufficient to meet the pleading requirement to assert cognizable claims of a conspiracy.  <u>Slotnick v. Garfinkle</u>, 632 F.2d 163, 165 (1st Cir. 1980) ( allegations of a conspiracy under Section 1983 "must . . . be supported by material facts, not merely conclusory statements").

---

[3]Notably, a review of plaintiff's extensive litigation history indicates he frequently asserted vast conspiracy claims.  <u>See, e.g.</u>, <u>D'Amario v. Weiner, et al.</u>, Civil Action No. 12-6098 (D.N.J. 2012) (noting some of plaintiff's litigation history).  In that case, plaintiff asserted that federal judges, probation officers, Federal Bureau of Prisons employees, criminal defense attorneys, an Assistant United States Attorney and a doctor were part of a decades-long conspiracy to rig the federal courts against him.  The Court concluded that the majority of plaintiff's claims "were irrational and wholly incredible" and "could not surpass credulity."  <u>Id.</u>  (Memorandum, D. 10).

The same holds true with respect to plaintiff's general allegations against Quinn.  Plaintiff baldly alleges that this defendant is withholding certain anonymous letters and generally had approved the forging of the letters to frame him, but plaintiff fails to state with any specificity or underlying claims for actions taken by this defendant that would state a plausible claim for relief.  Moreover, even if true, it appears that any actions taken by this defendant also are time-barred.[4]  Further, it appears that plaintiff is seeking to sue Quinn in his official capacity for actions in prosecuting him in the state criminal case, focusing on the use of the anonymous letters.  As noted above, plaintiff seeks relief that would enable him to correct alleged past wrongs by the defendant based on his criminal prosecution.  This Court previously noted the reasons why this type of injunctive relief -- interfering with state court litigation and compelling a state official to act -- cannot be granted to plaintiff.  See D. 7 at 9-10.

As an additional matter, plaintiff has named only two (2) defendants in the caption of the amended complaint:  Clerk Magistrate Sturdy and District Attorney Quinn.  He has provided only a summons form for Quinn.  Nevertheless, in the body of the amended complaint, plaintiff lists the names of a number of clerks, court personnel, police officers and others, presumably including them as defendants as well.  He then proceeds to allege conspiracy claims against the defendants, collectively, making it unclear against whom the claims are asserted.  Apart from stating the alleged wrongful conduct occurred over a span of years, plaintiff does not provide any specific dates within the past three years when the actions occurred.  As noted previously, see n.7, *supra*, many of his claims were asserted in lawsuits in 1998-2008.

Although this Court generally would afford a *pro se* plaintiff an opportunity to amend his

---

[4]Notably, the claims regarding the forged letters were raised by plaintiff at least as of 2009.  Specifically, while a prisoner, plaintiff filed suit asserting substantially similar allegations of misconduct by Sellers and Quinn, as well as harassment and non-disclosure of records relating to the anonymous letters to Sellers.  Plaintiff sought fingerprint and DNA testing at that time.  He also contended that upon his release and return to Rhode Island, certain law enforcement officers would retaliate against him for filing a lawsuit, referencing incidents in 1999 and claiming that since 1996 he had been targeted and stalked by police.  See D'Amario v. Coakley, Civil Action No. 09-11918-PBS (Compl. D. 9).  On November 19, 2009, Judge Saris dismissed the case without prejudice because plaintiff was a three-strikes litigant ineligible to proceed *in forma pauperis*.

complaint to cure the Rule 8 pleading deficiencies, the Court has already allowed plaintiff an opportunity to amend. More importantly, this Court considers that it would be an exercise in futility to permit further amendments, because (except for the DNA claim), all other claims are time-barred and are deemed to be frivolous under the *in forma pauperis* statute. Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991), cert. denied, 502 U.S. 1063 (1992).

### 3.      The Favorable Termination Rule Bars Claims Relating to Plaintiff's Criminal Conviction

As a final matter, apart from the statute of limitations bar and the Rule 8 pleading deficiencies, to the extent that plaintiff is suing any of the persons listed in the amended complaint for any adverse consequences arising out of his state criminal conviction (such as the withholding, altering and/or fabricating of evidence, falsely imprisoning him, "fixing" cases against him, bringing fraudulent criminal charges and conspiring by and among the courts, police and others through cronyism and corruption) his claims are barred by the favorable termination rule as set forth in the United States Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the United States Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." Id. at 486-87 citing Preiser v. Rodriguez, 411 U.S. 475 (1973). This rule applies not only where the plaintiff expressly states that his conviction or sentence is invalid, but wherever "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 487. In a later decision, the Supreme Court explained that the "favorable termination" rule of Heck applies to § 1983 actions in which a prisoner/plaintiff seeks injunctive relief. See Wilkinson v. Dotson, 544 U.S. 74, 82 (2005).

The favorable termination rule applies to bar his claims despite the fact that plaintiff filed this action after the expiration of his criminal sentence and thus cannot meet the "in custody" requirement for habeas petitions pursuant to 28 U.S.C. § 2254 to challenge the invalidity of his

conviction.  This Court recognizes that some circuits have relied on concurring and dissenting opinions in <u>Spencer v. Kemna</u>, 523 U.S. 1 (1998) to create an exception to the favorable termination rule of <u>Heck</u> in circumstances where, as here, a § 1983 plaintiff has no remedy in habeas corpus to address alleged constitutional wrongs because he is released from custody and thus cannot meet the "in custody" requirements for habeas review.  <u>See, e.g.,</u> <u>Powers v. Hamilton County Public Defender Comm'n</u>, 501 F.3d 592, 603 (6th Cir. 2007); <u>Harden v. Pataki</u>, 320 F.3d 1289, 1298 (11th Cir. 2003).[5]

The First Circuit, however, has not interpreted the concurring and dissenting opinions in <u>Spencer</u> as creating an exception to the favorable termination rule of <u>Heck</u>.  It has explicitly held that <u>Heck</u> applies even where federal habeas relief is unavailable.  <u>See</u> <u>Figueroa v. Rivera</u>, 147 F.3d 77 (1st Cir. 1998).  In <u>Figueroa</u>, family members of an inmate who had died in prison while his § 2254 petition was "languish[ing]" in court, brought a § 1983 action alleging, *inter alia*, conspiracy to frame the inmate.  <u>Id.</u> at 79.  Because of the inmate's death, the § 2254 petition was then dismissed as moot.  <u>See id.</u> at 79-80.  The § 1983 action also was dismissed.  In upholding the district court's dismissal of the § 1983 action for failure to state a claim upon which relief may be granted, the First Circuit held that <u>Heck</u> barred the § 1983 claim.  The Court acknowledged  plaintiffs' position that "strict application of <u>Heck</u> works a fundamental unfairness in this case" and noted that this position ["struck] a responsive chord."  <u>Id.</u> at 80-81.  Nevertheless, the Court concluded that no equitable exception to <u>Heck</u> exists.  <u>Id.</u>

<u>Figueroa</u> remains the controlling law in this Circuit and this Court must apply it to plaintiff's case.  <u>Id.</u> at 81 n.3; <u>see</u> <u>Thore v. Howe</u>, 466 F.3d 173, 180 (1st Cir. 2006).  Plaintiff's contention therefore, that he should be allowed to bring his § 1983 claims in this Court because he cannot

---

[5]In <u>Molina-Aviles v. District of Columbia,</u> 797 F. Supp. 2d 1, n.5 (D.D.C. 2011), the United States District Court for the District of Columbia noted the split in Circuits on this issue, stating: "The First, Fifth, and Eighth Circuits have determined that the <u>Spencer</u> exception is mere dicta, and without an actual Supreme Court decision overruling <u>Heck</u>, those Circuits continue to follow <u>Heck</u>, whereas the Second, Fourth, Sixth, Seventh, Ninth and Eleventh Circuits have accepted the <u>Spencer</u> exception."  <u>Id.</u> (citing Circuit cases).

challenge his unlawful conviction through a habeas petition, is unavailing.[6]  Where plaintiff has expressly alleged that ability to have forensic testing on the anonymous letters "would allow [him to] invalidate every arrest/search warrant . . . and support postconviction proceedings," D. 11 at ¶ 27, plaintiff's claims fall squarely under <u>Heck</u>.

### 4.        The Court Cannot Grant Plaintiff's Claims for Relief

As noted above, plaintiff's show cause response does not address the problems outlined in the prior Memorandum and Order; namely, that the injunctive relief sought cannot be granted. Further, this Court again finds that the requests for relief are overbroad and not rationally related to plaintiff's allegations.  Finally, where plaintiff's § 1983 claims attacking the validity of his state criminal conviction are barred by <u>Heck</u>, there is no basis for granting any relief that is sought in connection with this challenge (such as compelling Quinn to disclose the anonymous letters, provide testimony, provide cassette tapes of a hearing, etc.).

In light of the above, this case shall be <u>DISMISSED</u>.

### III.   Certification that any Appeal Would not be Taken in Good Faith

For the reasons set forth herein, this Court considers that any appeal by plaintiff of this matter would not be taken in good faith.  Under 28 U .S.C. § 1915(a)(3) "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." <u>Id.</u> Similarly, under Fed. R. App. P. 24(a)(3), a party who has been permitted to proceed *in forma pauperis* in the district court action may proceed on appeal *in forma pauperis* without further

---

[6]Plaintiff previously filed a § 2254 habeas petition in this Court challenging each of the criminal cases referenced in his amended complaint, on the grounds of an equal protection violation, an involuntary plea and ineffective assistance of counsel.  <u>See</u> <u>D'Amario v. Walsh</u>, Civil Action No. 05-11931-RWZ.  On August 16, 2006, Judge Zobel dismissed the petition on the grounds that D'Amario did not meet the "in custody" requirement because he was currently serving a federal sentence and not the state sentence.  Further, the petition was dismissed on the grounds that D'Amario had not exhausted his administrative remedies.  The Court rejected D'Amario's unsupported assertions that the state courts would not docket his appeals and would not transmit his case to the Appeals Court.  Finally, the petition was dismissed on the grounds of failure to name the proper respondent.  <u>See</u> D. 17-2.  On December 13, 2006, the First Circuit dismissed the appeal on the ground that "Jurists of reason would not find it debatable whether the district court was correct in its procedural rulings."  <u>D'Amario v. Walsh</u>, No. 06-2332; Judgment, D. 28, entered Nov. 22, 2006; <u>See</u> Mandate, D. 29, entered Dec. 13, 2006.

authorization <u>unless</u> the district court certifies that the appeal is not taken in good faith.   <u>Id.</u>   A

certification prohibits *in forma pauperis* status on appeal even though plaintiff has been found to be

indigent.  Such is the case here.

The Clerk is directed to transmit a copy of this Memorandum and Order to the First Circuit

Clerk's Office forthwith.

**IV.    Conclusion and Order**

Based on the foregoing and for all the reasons previously set forth in the Memorandum and

Order, D. 7, it is hereby Ordered that:

1.    This action is <u>DISMISSED</u> in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii)
      <u>with</u> <u>prejudice</u>.

2.    This Court <u>CERTIFIES</u> pursuant to Fed. R. App. P. 24(a)(3) that any appeal of the matters
      contained in this Memorandum and Order would not be taken in good faith.

**So ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge

11